# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| **DONALD WOOD,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:13cv01888 TCM** |
| | ) | |
| **ROBERT BOSCH** | ) | |
| **TOOL CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

This matter is before the Court on a motion to exclude the expert report and testimony of Darry Robert Holt ("<u>Daubert</u> motion"), filed by Robert Bosch Tool Corporation ("Defendant") [Doc. 87] and on Defendant's motion [Doc. 109] to strike Holt's July 14, 2015 declaration [Doc. 95-26].1  Donald Wood ("Plaintiff") opposes the motions.  Both parties have submitted evidentiary materials and memoranda of law in support of their positions on the motions; and Defendant requests oral argument.

### Background

This is a product liability case in which Plaintiff alleges a table saw, specifically, a Skilsaw Model 3305 ("saw" or "Skil 3305"), that was designed, manufactured, distributed, and sold by Defendant, injured Plaintiff on February 28, 2010, when the saw's rotating blade and Plaintiff's left hand made contact while Plaintiff was using the saw in a "reasonable, foreseeable and intended manner."  (Pl. Compl. at 6 and 15.)  In particular, Plaintiff alleges that the saw was "unreasonably dangerous as designed and

---

[1] The unredacted version of this declaration is available under seal at Doc. 97-1.

manufactured" because the saw's "splitter or spreader [was] attached directly to the guard," the saw did not have a "riving knife," and the saw lacked flesh detection or similar technology that stops "the spinning saw blade upon contact with human skin." (Id. at 7, 9, 11, 14.)  In relevant part, such technology may be referred to as SawStop technology.  Plaintiff seeks damages based on claims that Defendant is liable due to strict product liability (Count I), negligence (Count II) and a breach of the implied warranty of fitness for a particular purpose (Count III).  The jury trial is scheduled to begin on November 2, 2015.

Plaintiff has identified Holt as a retained expert.  (Pl. Rule 26(a)(2) Expert Disclosures, attached to Def. Mem. Supp. Daubert Mot., at 1 [Doc. 88-1 at 1].)  Holt filed an original report, dated April 28, 2014 [Doc. 88-2]; a supplemental report, dated May 29, 2015 [Doc. 88-4]; and a declaration, dated July 14, 2015 [Doc. 95-26]; and has been deposed twice, once in June 2014 (see Holt Deposition Tr. [Doc. 88-3]) and once in June 2015 (see Holt Deposition Tr. [Doc. 88-6]).  Defendant moves to strike Holt's declaration and to exclude Holt's testimony and reports ("Daubert motion").

Holt's Original Report, dated April 28, 2014 [Doc. 88-2].  In support of its Daubert motion, Defendant provided a copy of Holt's original report.  That report referred to five appendices, which were not provided with the report but were provided with Holt's declaration (Docs. 95-27 through 95-31).  In summary, that report provides the following information.

Holt has a Bachelor of Science degree in mechanical engineering from Purdue University, and has worked as an engineer since he graduated in 1963.  (Holt's Professional Resume [Doc. 95-27].)  He worked for five years as a "manufacturing

process development engineer" for a company's chemical division in a position he describes in part as including the following responsibilities, "[t]roubleshooting, process design, [and] evaluation of design and performance of machinery and equipment."  (Id.)  Since 1974 he has worked as a consulting engineer doing what he describes, in part, as "[m]echanical design, machine design, stress analysis, failure analysis, structural design, safety evaluation of structure, machine equipment, and process design, analysis of machinery, equipment, and vehicle failures, [and] accident reconstruction."  (Id.)  Holt also reports that he has experience "with woodworking tools, including table saws, having built or supervised personal house additions and house construction." (Holt's Apr. 28, 2014 Report at 1 [Doc. 88-2].)

Holt was asked to give his opinion, within a reasonable degree of engineering certainty, about the "adequacy of the safety design of the . . . saw and the causal relation of the design to [Plaintiff]'s accident and injury."  (Id. at 2.)  To do this, Holt reportedly spoke with Plaintiff; reviewed photographs of the saw, as well as its operating manual and parts list, the complaint, Plaintiff's medical records, various discovery documents and deposition transcripts, certain materials produced by the defendants in this and other table saw lawsuits, and several published materials; examined and tested various table saws with modular guards; visited SawStop, LLC facilities on several occasions from 2004 to 2012; and evaluated several SawStop saws, which have flesh detection technology.[2]  (Id. at 2-3.)

Holt reported that the accident occurred while Plaintiff was using a Skil 3305 saw that had been manufactured in September 2009 to rip 1" wide strips from a 4' x 8' x 1/4"

---

[2]   This is also known as an active injury mitigation system or AIMS.

piece of flakeboard; it occurred after Plaintiff had made 3 to 4 of the rip cuts; the blade was set at a 2" height, the guard was installed, the fence was installed 1" to the right of the blade, and most of the flakeboard sheet was to the left of the blade; Plaintiff "was feeding with his right hand and holding the workpiece down and to [the] fence with his left hand"; and Plaintiff's wife "was off-bearing the workpiece."  (Id. at 4; 11, 20.)  At the time of the accident, Plaintiff had ripped approximately 6' with the trailing end of the workpiece approximately 6"-8" off the table front when the workpiece "jerked" and "bang[ed]" and his left hand, which was to the left of the blade at approximately the front edge of the table, slipped into the blade."  (Id. at 4.)  Four of Plaintiff's fingers were cut from the palm side, with the little finger cut first and his index and little fingers "traumatically amputated at approximately the middle knuckle."  (Id. at 4-5.)  Based on Plaintiff's medical records and accident description, Holt concluded that Plaintiff's accident occurred as a result of a kickback event during which Plaintiff's left hand contacted the blade.  (Id. at 5.)

In his original report, Holt opined that the saw is "unsafe and unreasonably dangerous . . . and presents a substantial hazard and risk of severe injury to users during the normal use" of the saw in that there is "a high probability of people coming into contact with the rotating blade hazard."  (Id. at 3; see also id. at 35.)  In particular, Holt stated that the saw is inadequately safeguarded in that it did not have "an independent, either removable or non-removable, riving knife which rises and falls with the blade as it is adjusted in height"; it did not have "a modular guard which rises and falls with the blade as [is] now required by UL 987, 7th [Edition]" but instead had a guard assembly that was typically removed and not used; and the saw did not have blade stopping (or flesh

detection) technology, which senses blade contact by a human and stops or stops and drops the blade "to mitigate the severity of injury from a blade contact event." (Id. at 3-4; see also id. at 35-39.) If it had the flesh detection or SawStop technology, Holt reported "the resulting injury would have been minimal [and if] the saw [had] been equipped with a modular type guard, or an independent riving knife[,] the kickback event would have been prevented and the [modular guard's] tuning fork would have provided a frontal barrier to the blade." (Id. at 36; see also id. at 4.)

Holt's original report also includes his description of: ways in which a person's hand may come into contact with a saw blade; when a kickback may occur; the permanent assembly of components in the 3-in-1 blade guard; the purpose of the three components: a plastic hood guard, a splitter, and two anti-kickback pawls; other saws' guard assemblies; the requirement that all table saws manufactured after January 31, 2010, have "a new modular component guard which included a riving knife"; what constitutes "good safety design practice," including hazard analysis and risk assessment, for engineering; a history and chronology of the development of saw guards; the history of the development of SawStop and other flesh detection technology for saws; Holt's and others' testing of SawStop saws; and Holt's inspection of bench top saw prototypes with flesh detection technology.

While Holt's April 2014 report includes a discussion of issues related to a table saw user's removal of the guarding system, Holt opined that, even with the guard in place, a hand can be injured in a kickback event "if the hand goes under the . . . guard due to the

operator's force after the workpiece is kickbacked, or the hand and hood are kicked up and the hand falls down onto the top of the blade before the guard (hood) recovers the blade." (Id. at 10.)

Holt further opined that the saw was defective in design due to the "lack of adequate warnings" about the "inadequately controlled blade hazard." (Id. at 38; see also id. at 4.) In his response to Defendant's Daubert motion, Plaintiff advises that he "does not intend to have Holt opine that the saw was defective due to lack of adequate warnings [and] does not intend to pursue a warnings claim in this action." Therefore, the Court will not further address that aspect of Holt's opinion. The Court will deny as moot the Daubert motion to the extent it addressed Holt's opinion regarding the inadequacy or lack of any warning.

Supplemental Report, dated May 29, 2015 [Doc. 88-4]. In support of its Daubert motion, Defendant also provided a copy of Holt's supplemental report. By his supplemental report, Holt addressed whether it was feasible to add flesh detection technology to a table saw. (Id. at 1.) He opined that "flesh detection technology could have been incorporated on the subject model saw at the time it was manufactured" in 2009. (Id.; accord id. at 13 ("it was technologically feasible to incorporate flesh detection technology on any table saw (cabinet, contractor o[r] benchtop) manufactured in 2002 or later"). Holt reported that "the design needs only to be reconfigured to accommodate the technology and a mechanical engineering stress analysis needs to be done to ensure the component parts are strong enough to withstand the braking forces." (Id.) Holt reported

that the "electrical technology" needed for "flesh detection technology has been available since 1999, and the mechanical technology for many decades." (Id. at 4.) He also noted that Defendant and SawStop had recently released commercial versions of a bench top saw with flesh detection technology. (Id. at 4.)

In May 2015, Holt examined a production model SawStop jobsite saw and compared its components with four consumer table saws, other than a Skilsaw Model 3305 saw, "to compare their functional design principles." Holt reported that his analysis of those five saws "confirms that incorporating flesh detection into a bench top saw is not difficult, does not fundamentally change the nature, form, or function of the saw, and has been feasible since 2002." (Id. at 5.) Holt described those five saws as being similar in design and form in that they all had a hollow plastic base and a metal table; and had a working or cutting assembly which was fastened to and hung from the underside of the table. (Id. at 6.) Therefore, Holt opined, "the incorporation of flesh detection technology did not require a complete re-design of a typical bench top saw." (Id.) Holt noted that the SawStop saw was different from the other four saws in three ways: (1) while the cutting assembly was mounted similarly in all five saws, the motor in the SawStop saw "drives the blade arbor indirectly with a belt and pulley rather than directly" as in the other four saws (id.); (2) "the arbor/blade was insulated from the rest of the metal drive components and a voltage was induced on it[; and (3)] a mount for the blade brake cartridge was also attached to the common metal plate hung from the table" (footnote omitted). (Id. at 6-7.)

To incorporate the SawStop safety system on bench top saws like the comparison

saws, Holt stated that two characteristics of a bench top saw needed to be changed, and neither was significant. (Id. at 7.) First, the hollow plastic base needed "to have larger, usable hollow cavities," which would require additional resin at an insignificant cost and would add only negligible weight to the saw. (Id.) Additionally, "the components and fasteners used to attach the brake to the mounting plate and the mounting plate to the underside of the table as well as to the arbor [would] have to be strong enough to withstand the braking and dropping forces." (Id.) "[A] stress analysis, [which is] an engineering tool utilized in the design of any product," would ascertain what size and material should be used for the components. (Id.) As support for Holt's findings, he quoted testimony provided in other lawsuits by Stephen Gass, PhD, who developed SawStop technology and products, and Peter Domeny, who used to head Defendant's product safety division. (Id. at 7-11.)

Finally, Holt opined that, based on his extensive testing, inspections, analyses, and review, "it is clear that flesh detection technology in no way impacts or impairs the ability of a saw to engage in cutting operations"; "does not significantly add to the weight of [the] table saw"; requires only "an increase of the central hollow cavity and would not increase the overall footprint of the saw"; and "would add approximately $100 to the cost of the saw." (Id. at 12.)

Holt Declaration, dated July 14, 2015 [Doc. 95-26]. Plaintiff provided Holt's challenged thirty-six page declaration in support of Plaintiff's opposition to Defendant's Daubert motion. There are seven exhibits attached to that declaration [Docs. 95-27

through 95-33]. Five were appendices to Holt's original report [Doc. 95-27 through 95-31]. One is a copy of Holt's original April 2014 report [Doc. 95-32], and the seventh attachment is a July 7, 2013 declaration of Dr. Gass [Doc. 95- 33].

The vast majority of the statements in Holt's declaration are identical to information provided in Holt's original and supplemental reports. Other parts of the declaration are not the same as information provided in Holt's earlier reports.

For instance, the declaration, unlike the earlier reports, includes a description of the "defining characteristic of a bench top table saw (as compared to a cabinet or contractor saw)" (Holt Decl. at 124 [Doc. 95-26]); a statement that Holt reviewed the testimony of Plaintiff and his wife at their depositions, which were taken after Holt prepared his original report and was first deposed, and that their deposition testimony is "consistent with the facts as [Plaintiff] explained them to [Holt] when [Holt] interviewed [Plaintiff]" and "does not in any way change or alter [Holt's] opinions in this case" (id. at 146); a list of circumstances that Holt opines were not "material or [did not] play[] any role in [Plaintiff's] kickback[] accident" or were "unlikely" to have "played any role in" the accident (id. at 147 and 148); and an explanation of one of his answers during his deposition (id. at 145). As to the latter, Holt declares:

> 145. On pages 114-115 of my June 18, 2014, deposition in this case, I was asked about the height of the blade [Plaintiff] was using, and I explained that, with the blade height being higher, "the risk associated with the use of the saw is greater." (Page 115.) To clarify, I was not meaning to suggest that there was an increased risk of kickback because the blade was set higher than guidelines. In this case, there is no indication

that the height of the blade had anything to do with causing [Plaintiff]'s kickback.  Rather, I was intending to convey that a higher blade height can lead to a user having more exposure to the blade and, as a result, a potentially more severe injury if the hand contacts the blade.

(Id.)

## Discussion

Motion to Strike Holt Declaration [Doc. 109].[3]  Defendant moves to strike Holt's declaration under Federal Rule of Civil Procedure ("Rule") 37(c)(1) on the ground Plaintiff failed to comply with expert testimony disclosure requirements under Rule 26(a)(2).  Specifically, Defendant notes the declaration was filed after the depositions of Holt and after the expiration of the deadline for the completion of discovery.  Characterizing Holt's declaration as "essentially a new report," Defendant argues that, due to its untimeliness, it should be considered the "equivalent [of] a failure to disclose," citing **Trost v. Trek Bicycle Corp.**, 162 F.3d 1004, 1008 (8th Cir. 1998) ("failure to disclose in a timely manner is equivalent to failure to disclose," citing Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th Cir. 1995)) and it is prejudicial to the preparation of Defendant's defense in that it contains new opinions and information.

---

[3] One paragraph listed in numerical order in the declaration is numbered 21.  The paragraph in the declaration that is between paragraph 46 and paragraph 47 is also numbered paragraph 21.  To clarify, the Court will refer to the latter paragraph as paragraph 46a, rather than as paragraph 21.

Defendant incorporates by reference and asks the Court to consider as its argument the argument it presented earlier with respect to its motion to strike the declaration of another of Plaintiff's experts, Kelly Mehler.  While not this Court's usual practice, the Court will do so for purposes of the motion to strike Holt's declaration.

Plaintiff counters that the information in the declaration is properly considered in this case because it falls within the scope of Holt's reports, is consistent with Holt's deposition testimony, or clarifies Holt's ambiguous deposition testimony.

Rule 26(a)(2) requires the disclosure of the identity and written reports of witnesses who are retained to provide expert testimony at trial. The deposition of such witnesses may occur "only after the report is provided," Rule 26(b)(4)(A); and the expert witness disclosures, as well as information provided in the expert's report and deposition, must be supplemented by "[a]ny additions or changes to th[at] information," Rule 26(a)(2)(E) and Rule 26(e)(2). When a party fails to provide the information or the identity of an expert witness in compliance with Rules 26(a) and 26(e), the court has wide discretion to fashion a remedy or sanction under Rule 37(c) that is appropriate under the circumstances. **Wegener v. Johnson**, 527 F.3d 687, 692 (8th Cir. 2008) (the district court did not abuse its discretion in excluding expert witness testimony supplemented less than three weeks prior to trial because, in relevant part, the late disclosure was neither substantially justified nor harmless, and "a continuance would have postponed a much-delayed trial"); accord **Williams v. TESCO Servs., Inc.**, 719 F.3d 968, 976 (8th Cir. 2013) (finding no "clear and prejudicial abuse of discretion" in the district court's decision to strike an expert's second report, which was disclosed after the close of both discovery and the summary judgment record, because that report "materially alter[ed], [rather than] merely clarif[ied]" the expert's original report and deposition testimony). Importantly, "the exclusion of evidence is a harsh penalty [for non-compliance with discovery

disclosure deadlines] and should be used sparingly." **Wegener**, 527 F.3d at 692; cf.
**Jackson v. Allstate Ins. Co.**, 785 F.3d 1193, 1203-04 (8th Cir. 2015) (affirming, under
the circumstances, the district court's denial of a motion to exclude expert trial testimony
due to the late disclosure of a supplemental expert report).  Courts have allowed
consideration of information in an expert's untimely declaration or affidavit when the
challenged statements do not contradict prior deposition testimony, those statements
provide more detailed information that is "entirely consistent with and do[es] not
significantly expand on any of the opinions or reasons in the" expert's report, or those
statements "merely expand upon or clarify initial opinions that the defendants had an
opportunity to test during discovery."  **Emerson Elec. Co. v. Suzhou Cleva Elec.
Appliance Co.**, 2015 WL 2176964, *4 (E.D. Mo. May 8, 2015 (No. 4-13CV01043
SPM); **Wilson Road Dev. Corp. v. Fronabarger Concreters, Inc.**, 971 F.Supp.2d 896,
902-03 (E.D. Mo. 2013); see also **Taylor v. Cottrell, Inc.**, 795 F.3d 813, 818 (8th Cir.
2015) (noting that "a post-deposition affidavit [will not be considered if it] contradict[s]
prior testimony in an attempt to create issues of fact . . . [b]ut an affidavit may be
submitted to clarify ambiguities or confusion in deposition testimony"; and concluding
the district court abused its discretion in striking a witness' post-deposition supplemental
affidavit because it "clarified and placed into context her prior testimony").

 While asking the Court to strike the entire declaration, Defendant objects to the
allegedly "new opinions and information" set forth in paragraphs 11, 13, 14, 18, 22, 46a,
56, 84, 113, 124, 143, and 145 through 149 of Holt's declaration as not having been

previously provided in Holt's reports or depositions.

The Court has reviewed the paragraphs of the declaration to which Defendant has not specifically objected, and concludes that they do not need to be stricken, because they do not provide contradictory or inconsistent information and, for the most part, contain information identical to information previously provided by Holt. After considering the available record, Holt's reports and declaration, as well as Holt's deposition testimony, in light of the paragraphs specifically challenged by Defendant, the Court will grant the motion in part and deny it in part as follows.

Paragraph 11 is identical to information provided in Holt's original April 2014 report in discussing Holt's opinion that the saw is inadequately guarded due to the absence of flesh detection or SawStop technology, except for the last sentence. That sentence states that "In fact, patents for similar devices go back to the mid-1990's (App. 4, Item 24)." Item 24 of Appendix 4 to Holt's April 2014 report lists "Flesh Detection Patents" as an item Holt relied on in deriving his opinions. Because Holt referred in his original report to flesh detection patents as material he relied on in reaching his opinions, the motion to strike the challenged portion of paragraph 11 will be denied.

The challenged portion of paragraph 13 describes the location of the spreader, the splitter's characteristics, and the effect of a rising and falling riving knife. The motion to strike the challenged portion of this paragraph will be denied in large part because the subject matter of that portion was the subject of testimony in Holt's first deposition. (See, e.g., Holt's June18, 2014 deposition at pages 53-54, 101-02, 104, and 106-08 [Doc. 88-3

at 14 and 26-27].)  The motion will, however, be granted to the extent the challenged portion of paragraph 13 mentions the splitter's "flexibility," and the sturdiness of a riving knife compared to a splitter, because Holt had not previously mentioned those matters in either his reports or his depositions.  Those characteristics do not merely clarify the information Holt previously provided, and should have been disclosed before the discovery and motions deadlines expired.  Therefore, the following information in paragraph 13 will be stricken: "flexibility and" from the second sentence and, from the fifth sentence, "and they are sturdier than the splitter that came on the subject saw."

Paragraph 14 discusses non-use of the blade guard, a matter which was also addressed in Holt's original report.  (See, e.g., Holt's April 28, 2014 Report at 9-11.) Therefore, the Court will deny the motion to strike this paragraph, except as noted in the discussion of paragraph 22.

Paragraph 18 addresses Plaintiff's inability to know all the details of the accident due to its unexpected nature, its speed or extremely short duration, and the trauma he sustained; and that these characteristics do not prevent Holt from reaching opinions to a reasonable degree of certainty.  In describing the accident in his original report, Holt used nearly identical language to report that it was understandable that Plaintiff did not know all the details of the accident due to "the unexpected nature of the incident, the speed or extremely short duration of the incident, and the trauma sustained."  (Id. at 5.)  To the extent Holt mentions in paragraph 18 of his declaration that he is able to state an opinion to a reasonable degree of certainty under those circumstances, that statement clarifies

Holt's earlier information, does not contradict it, and should not be surprising to Defendant or its experts. The motion to strike will be denied as to paragraph 18.

Paragraph 22 contains information regarding the development of a new modular guard, "now mandated by UL 987, 7th Edition," which consists of removable anti-kickback pawls, barrier elements for the top and sides of the blade, and an adjustable riving knife, "to replace the previous standard '3 in 1' guard." The Court will not strike that information as it is the same as or very similar to information in Holt's original report. (See id. at 11 and 15.) The motion will, however, be granted to strike the last sentence of that paragraph. That sentence says "[t]he saw model in the subject instance included such a modular guard." This statement is contrary to the available record which does not indicate that Plaintiff's saw had an adjustable riving knife or any other feature newly mandated by UL 987, 7th Edition. Additionally, to the extent the last sentence of paragraph 14, which states "[t]he subject saw included a modular guard" is a reference to the modular guard required by UL 987, 7th Edition, that statement shall also not be considered part of Holt's testimony.

Defendant challenges the information in the second to last sentence of paragraph 46a, but does not challenge the same information in paragraph 47 of Holt's declaration. In any event, the challenged information was first reported by Holt in April 2014 at page 10 of his original report. Therefore, the motion to strike that information will be denied.

Defendant next challenges the reference in paragraph 56 to "additional engineering

controls" Holt thought Defendant should have considered upon completing a "formal risk assessment" and concluding that "the residual risk of utilizing the guard assembly as designed as the primary safeguard was unacceptable." Defendant specifically argues that Holt did not "previously discuss[]" such engineering controls. To the contrary, the need for a saw manufacturer to consider additional "engineering controls," in particular, flesh detection technology, due to the continuing risk of injury to the user even with the available blade guard, were discussed by Holt at pages 13, 28, 35, and 36 of his original report. The motion to strike will be denied as to this paragraph.

After providing a three-page chronology of events, starting with statements in a 1924 patent and ending with information from 2011, summarizing the industry's experience with users' removal of a table saw's blade guard, complaints that the guard was not "user friendly," table saw accident frequency, and the development of SawStop flesh detection technology, Holt declares in paragraph 84:

> In summary, for decades, table saw manufacturers have known or should have known of the many valid customer complaints about the traditional 3-in-1 blade guard. They have also known or should have known that, as a result of the widespread complaints about the traditional 3-in-1 guard, that most customers did not use the guard.

Defendant challenges this paragraph as containing "new opinions and information of . . . Holt relating to the 3-in-1 blade guard." A discussion of users' removal of the guard was part of Holt's original report, and he acknowledged during his June 2014

deposition that Plaintiff's saw had a 3-in-1 guard on it. (See, e.g., Holt's April 28, 2014, Report at pages 9-11 [Doc. 88-2]; Holt's June 18, 2014 deposition at 102-3 and 108-09 [Doc. 88-3 at 26-28].) Therefore, the motion to strike paragraph 84 will be denied.

With respect to its challenge to paragraph 113 of Holt's declaration, Defendant urges that the information at the end of the paragraph regarding Holt's inspection of a "Ryobi prototype . . . was never previously disclosed by . . . Holt." That same information, however, was provided by Holt at footnote 1 on page 5 of his May 2015 supplemental report [Doc. 88-4]. The Court will deny this part of the motion to strike.

Defendant also challenges the last two sentences of paragraph 124. Those sentences state:

> The defining characteristic of a bench top table saw (as compared to a cabinet or contractor saw) is that a bench top saw is transportable and can be easily moved to job sites. The SawStop jobsite saw, the Bosch REAXX saw, and the subject saw all exhibit this characteristic.

Defendant challenges those statements as containing "new opinions relating to the alleged defining characteristic of a benchtop table saw." In his reports and deposition testimony Holt refers to all three types, and models, of the above-mentioned saws. Defendant does not contend the observations in paragraph 124 are inaccurate or surprising. While the information may expand on earlier references, it is not contradictory to or inconsistent with those references. The Court concludes that this paragraph clarifies Holt's earlier information and will not strike it.

Defendant then moves to strike the information in paragraph 143, which briefly summarizes reasons for SawStop's decisions about which type of saw to produce in what order based on Holt's understanding of saw markets. Holt has not previously mentioned or referred to any of the information in this paragraph; and the information does not clarify prior information provided by Holt. Holt's earlier deposition testimony indicates he has not had access to information about Sawstop's development of its products. (See, e.g., Holt's June 25, 2015 deposition at 69 [Doc. 88-6].) Nor is it clear that Holt has access to information about SawStop's decisions regarding the order and reasoning for the production of its saws. Moreover, the declaration by Dr. Gass that is attached to Holt's declaration does not provide any information that would support the statements in paragraph 143 of Holt's declaration. Under the circumstances, the Court will grant the motion and strike paragraph 143 in its entirety.

Defendant challenges paragraph 145 in which Holt explains one of his deposition answers. In particular, Holt declares:

> 145. On Pages 114-115 of my June 18, 2014, deposition in this case, I was asked about the height of the blade [Plaintiff] was using, and I explained that, with the blade height being higher, "the risk associated with the use of the saw is greater." (Page 115.) To clarify, I was not meaning to suggest that there was an increased risk of kickback because the blade was set higher than guidelines. In this case, there is no indication that the height of the blade had anything to do with causing [Plaintiff]'s kickback. Rather, I was intending to convey that a higher blade height can lead to a user having more exposure to the blade and, as a result, a potentially more severe injury if the hand contacts the blade.

The Court will deny the motion to strike this paragraph because the information simply clarifies an ambiguous deposition answer. _See_ **Emerson Elec. Co.**, 2015 WL 2176964, at *2 (denying a motion to strike where there was no "clear contradiction between the" expert witness' declaration and his earlier "somewhat ambiguous" deposition testimony).

In paragraph 146, Holt states that he reviewed the deposition testimony of Plaintiff and his wife, which was available after Holt's original report and first deposition, and reports that "[t]heir testimony does not in any way change or alter [his] opinion in this case." Defendant's request to strike this paragraph will be denied as the information in the paragraph is consistent with and does not significantly expand Holt's opinions and reasoning.

In paragraph 147, Holt lists six circumstances for which Holt opines "[t]here is no evidence that any of the following were material or played any role in [Plaintiff]'s kickback[] accident." In paragraph 148 Holt states "[i]t is unlikely that any failure to support the left side of the board played any role in [Plaintiff]'s kickback accident" and sets forth the basis for his conclusion. Each of the circumstances was the subject of questioning or testimony of Holt during his first deposition, although it is not clear that Holt opined that they did not play a role in Plaintiff's accident during his deposition testimony. (_See_, _e.g._, Holt June 18, 2014 Deposition at 37-38, 48, 51-52, 95, 148-49, and 158-60.) Defendant more specifically contends that, as to two of the listed items, the alignment of the splitter and the fence with the blade, this information conflicts with

Holt's earlier deposition testimony acknowledging that alignment of the saw's components is one way to try to avoid a kickback event and that he did not know if the components were aligned at the time of the accident. Holt's declaration that there is no evidence indicating a lack of alignment affected Plaintiff's accident is not, however, contrary to his deposition testimony that Plaintiff's prior cuts indicated that those components were aligned. (See id. at 48 and 148-49.) Defendant also specifically contends the paragraph describing the reasoning supporting Holt's declaration that it is "unlikely" that a failure to support the left side of the board played any role in the accident contradicts Holt's original deposition testimony indicating that he did not know where Plaintiff's wife was standing or whether she or anything was keeping that side of the board level. Again this declaration is not contradicted, but rather is supported by Holt's earlier deposition testimony. (See, e.g., id. at 21, 158-60.) Accordingly, the Court will deny the motion to strike paragraphs 147 and 148.

Finally, Defendant challenges paragraph 149. That paragraph states:

In my experience, all table saws use the same basic design described in Paragraph 114. I have reviewed photographs of the internal components of the subject saw taken by [Defendant]'s expert, Thomas Siwek. They confirm that the subject saw, like all other table saws, uses the same basic design.

This paragraph advises that Holt verified through a review of another's pictures of the interior of Plaintiff's saw Holt's perspective that the Skil 3305 had, like other table saws he analyzed, "the same basic design." This perspective with respect to saws other than

the Skil 3305 was clearly presented in Holt's supplemental report and second deposition through his reported comparison of five tablesaws. The Court will not strike this paragraph as it clarifies Holt's previous analysis of the basic design of table saws as it applies to the saw in this case, and Defendant had the opportunity to pursue this topic during Holt's June 2015 deposition.

Based on the foregoing, the Court will grant in part and deny in part Defendant's motion to strike Holt's July 14, 2015 declaration.

Daubert Motion to Exclude Holt's Reports and Testimony [Doc. 87]. Pursuant to **Daubert v. Merrell Dow Pharm., Inc.**, 509 U.S. 579 (1993) and Federal Rule of Evidence 702 ("Rule 702"), Defendant moves to exclude Holt's expert testimony and reports because his opinions are not reliable and are speculative in that they are not based on the facts of this case; because Holt is not qualified to address the technical and economic feasibility of incorporating flesh detection technology in the Skil 3305; and because Holt's opinion regarding such feasibility is based entirely on Dr. Gass's opinion. Plaintiff counters that Holt's opinions are reliable and relevant to assist the jury under the circumstances.

Federal law governs the admissibility of expert testimony in cases pursued under this Court's diversity jurisdiction, such as this one. **US Salt, Inc. v. Broken Arrow, Inc.,** 563 F.3d 687, 691 (8th Cir. 2009). Federal Rule of Evidence 702 provides that

[a] witness who is qualified as an expert by knowledge, skill, experience,

training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data

> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

This inquiry is a flexible one "'tied to the facts' of a particular 'case,'" **Kumho Tire Co. v. Carmichael**, 526 U.S. 137, 150 (1999) (quoting Daubert, 509 U.S. at 591), and focuses "solely on principles and methodology, not on the conclusions that they generate," **Daubert**, 509 U.S. at 595. The proponent of the expert testimony must prove by a preponderance of the evidence that the expert is qualified and that the testimony is relevant and reliable. **Khoury v. Philips Med. Sys.**, 614 F.3d 888, 892 (8th Cir. 2010); see also **Lauzon v. Senco Prods., Inc.**, 270 F.3d 681, 686 (8th Cir. 2001). In reaching its decision regarding the admission or exclusion of expert testimony, the Court may not "weigh or assess the correctness of competing expert opinions." **Johnson v. Mead Johnson & Co.**, 754 F.3d 557, 562 (8th Cir.), cert. denied, 135 S. Ct. 489 (2014). "[D]oubts regarding the usefulness of an expert's testimony" are resolved in favor of admissibility, **Marmo v. Tyson Fresh Meats, Inc.**, 457 F.3d 748, 758 (8th Cir. 2006); accord **Johnson**, 754 F.3d at 562; because "[a]n expert's opinion should be excluded only

if that opinion is so fundamentally unsupported that it can offer no assistance to the jury, **Synergetics, Inc. v. Hurst**, 477 F.3d 949, 956 (8th Cir. 2007) (internal quotation marks and citation omitted).

Relevance is pertinent to whether or not the expert's information will assist the trier of fact in understanding the evidence or resolving an issue of fact, and requires that the expert's testimony relate to an issue in the case. See **Daubert**, 509 U.S. at 591; cf. **United States v. Reynolds**, 77 F.3d 253, 255 (8th Cir. 1996) (per curiam) (not addressing the reliability requirement of Daubert upon concluding the challenged expert testimony was not relevant because it addressed child victim interviewing techniques and there was no evidence suggesting that the child victim had been interviewed). Defendant challenges the relevance of Holt's opinion that the guard was defective because many users remove it. Because Plaintiff had the guard in place at the time of the accident, the Court will grant Defendant's Daubert motion to the extent it challenges Holt's opinion that the guard is defective in that many table saw users remove it.

Defendant also challenges as unreliable Holt's testimony regarding the defective nature of the guard to the extent it did not have a rising and falling riving knife or flesh detection technology on the ground that Holt did not use an appropriate methodology, scientific or otherwise, and did not sufficiently apply the facts of this case.

 A district court has "great latitude in determining whether expert testimony meets the reliability requisites of Rule 702." **Allen v. Brown Clinic, P.L.L.P.**, 531 F.3d 568,

573 (8th Cir. 2008). While a trial court

> *may* consider one or more of the more specific factors that Daubert
> mentioned when doing so will help determine th[e expert] testimony's
> reliability . . . the test of reliability is "flexible," and Daubert's list of
> specific factors neither necessarily nor exclusively applies to all experts or
> in every case. Rather, the law grants a district court the same broad latitude
> when it decides how to determine reliability as it enjoys in respect to its
> ultimate reliability determination.

**Kumho Tire Co., Ltd.**, 526 U.S. at 141-42. In ascertaining whether the expert testimony

will reliably aid the trier of fact by providing information beyond its common knowledge,

**Kudabeck v. Kroger Co.**, 338 F.3d 856, 860 (8th Cir. 2003), the Court should examine

factors pertinent to the case, including whether the expertise was "developed for litigation

or naturally flowed from the expert's research; . . . and whether the proposed expert

sufficiently connected the proposed testimony with the facts of the case, **Presley v.**

**Lakewood Eng'g & Mfg. Co.**, 553 F.3d 638, 643 (8th Cir. 2009) (internal quotation

marks and citation omitted).

A litigant's mere disagreement with the expert's assumptions and methodology

does not support exclusion of the expert's testimony. **David E. Watson, P.C.**, 668 F.3d

at 1015. "Attacks on the foundation" of the expert's opinion and conclusions, and the

completeness of the expert's methodology, go to the weight rather than the admissibility

of the expert's testimony. **Sphere Drake Ins. PLC v. Trisko**, 226 F.3d 951, 955 (8th Cir.

2000) (the foundation of the expert's opinions and conclusions); **Kudabeck**, 338 F.3d at

861 (completeness of the expert's methodology). The factual basis of an expert's opinion

goes to the credibility of that testimony. **Synergetics, Inc.**, 477 F.3d at 955. Having

reviewed Holt's reports, Holt's declaration, as allowed, and Holt's deposition testimony, as

well as any materials submitted by the parties in support of their positions on the <u>Daubert</u> motion, the Court concludes that neither the factual basis of Holt's opinion nor the methodology he used require exclusion of his testimony.

Finally, Defendant challenges Holt's qualifications to opine about the technological and economic feasibility of incorporating flesh detection technology into the Skil 3305. While addressing this challenge the Court is not now resolving whether such feasibility evidence is necessary under Missouri law to prove one or more of Plaintiff's claims. Additionally, the Court is mindful that any gap in Holt's qualifications or knowledge goes to the weight, rather than the admissibility, of his testimony. <u>See</u> **<u>American Auto. Ins. Co. v. Omega Flex, Inc.</u>**, 783 F.3d 720, 726 (8th Cir. 2015). Due to Holt's education and experience in mechanical engineering, his review and testing of SawStop saws that include flesh detection technology, and his experience with and consideration of tablesaws without flesh detection technology, the Court concludes he is qualified to testify, to the extent necessary, to the feasibility of incorporating flesh detection technology in the Skil 3305. The Court will, therefore, deny the motion to that extent.

After careful consideration, the Court finds that Holt is qualified to present his opinions regarding the technological feasibility of incorporating flesh detection technology into the Skil 3305; and that his opinions on the efficacy of the 3-in-1 guard on that saw without the rising and falling riving knife, modular guard, and flesh detection technology, as well as his opinions regarding the benefits of including a rising and falling riving knife or modular guard on the saw or incorporating flesh detection technology in

the saw, will provide relevant and reliable information that will assist the jury in resolving the issues in this case. To the extent Defendant considers Holt's opinions "shaky," "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." **Daubert**, 509 U.S. at 596; accord **Kudabeck**, 338 F.3d at 862.

Accordingly, after careful consideration,

**IT IS HEREBY ORDERED** that Defendant's motion to strike Holt's July 14, 2015 declaration [Doc. 109] is **GRANTED in part** only so that the following is deleted from Holt's July 14, 2015 declaration:

"flexibility and" from the second sentence of paragraph 13;

"and they are sturdier than the splitter that came on the subject saw" from the fifth sentence of paragraph 13;

the last sentence of paragraph 14 only to the extent it refers to the modular guard mandated by UL 987, 7th edition;

the last sentence of paragraph 22; and

the entirety of paragraph 143.

**IT IS FURTHER ORDERED** that Defendant's motion to strike Holt's July 14, 2015 declaration [Doc.109] is otherwise **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Daubert motion regarding Holt [Doc. 87] is **DENIED** as moot to the extent it addressed Holt's opinion regarding any inadequacy or lack of warning, because Plaintiff advises that he "does not intend to have Holt opine that the saw was defective due to lack of adequate warnings [and] does not

intend to pursue a warnings claim in this action."

**IT IS FURTHER ORDERED** that Defendant's <u>Daubert</u> motion regarding Holt [Doc. 87] is **GRANTED** to the extent it addressed Holt's opinion that the 3-in-1 blade guard was defective because most users removed it.

**IT IS FURTHER ORDERED** that, in all other respects, Defendant's <u>Daubert</u> motion regarding Holt [Doc. 87] is **DENIED**.

**IT IS FINALLY ORDERED** that Defendant's requests for oral argument on these motions are **DENIED**.

<u>/s/ Thomas C. Mummert, III</u>
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this <u>24th</u> day of <u>September</u>, 2015.