# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DONALD WOOD, ) <br> ) <br>      **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **ROBERT BOSCH TOOL** ) <br> **CORPORATION,** ) <br> ) <br>      **Defendant.** ) | Case No. 4:13cv01888 TCM |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on a motion for summary judgment [Doc. 79] filed by Robert Bosch Tool Corporation ("Defendant"). Donald Wood ("Plaintiff") opposes the motion; both parties have filed evidentiary materials in support of their positions on the motion; and Defendant requests oral argument.

In their summary judgment memoranda, the parties make numerous references to the materials they submitted in support of their positions on Defendant's motions to exclude the testimony and reports of two of Plaintiff's experts, Kelly Mehler and Darry Robert Holt, and Defendant's motions to strike declarations by those two experts. The Court resolved those motions by separate orders. The Court relies on the parties' familiarity with those motions and their resolution in considering and resolving Defendant's summary judgment motion.

---

[1] This matter is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

## Background

This is a product liability case in which Plaintiff alleges a table saw, specifically, a Skilsaw Model 3305 ("saw" or "Skil 3305"), that was designed, manufactured, distributed, and sold by Defendant, injured Plaintiff on February 28, 2010, when the saw's rotating blade and Plaintiff's left hand made contact while Plaintiff was using the saw in a "reasonable, foreseeable and intended manner." (Pl. Compl. at 6 and 15.) In particular, Plaintiff alleges that the saw was "unreasonably dangerous as designed and manufactured" because the saw's "splitter or spreader [was] attached directly to the guard," the saw did not have a "riving knife," and the saw lacked flesh detection or similar technology that stops "the spinning saw blade upon contact with human skin." (Id. at 7, 9, 11, 14.) In this lawsuit, such technology may be referred to as SawStop technology. Plaintiff seeks damages based on claims that Defendant is liable due to strict product liability (Count I), negligence (Count II) and a breach of the implied warranty of fitness for a particular purpose (Count III). The jury trial is scheduled to begin on November 2, 2015.

Having reviewed the available record, including Plaintiff's complaint, Defendant's answer, and the parties' evidentiary materials regarding the summary judgment motion, the record reveals the following undisputed facts. Plaintiff's saw was manufactured in 2009, and complied with standards applicable at the time it was manufactured. (Def. Statem. Uncontr. Material Facts ("SUMF") ¶¶ 39, 40 [Doc. 81].) Plaintiff assembled the saw himself. (Id. ¶ 26.) At the time of the incident on February 28, 2010, Plaintiff was not using supports on the receiving side of the saw other than his wife, the blade guard was installed, and the blade height was set at 1¾" to 2". (Id. ¶¶ 7, 16, 17.) Plaintiff was cutting 1" by 8' strips from a 4'

by 8' by ¼" piece of flake board; and had already cut 3 or 4 of the 1" strips off the piece of flake board. (Id. ¶¶ 2, 3.) The incident occurred after Plaintiff had cut approximately 6' of another 1" strip, when Plaintiff's left hand went under the guard while he was feeding the board into the saw. (Id. ¶¶ 4, 21, 23.) The saw cut fingers off Plaintiff's left hand and did not injure Plaintiff's thumb. (Pl. Dep. at 83-84 [Doc. 81-1].)

The saw's Operating/Safety Instructions state in relevant part:

> When Ripping LONG BOARDS or LARGE Panels, always use a work support.
>
> **Long workpieces need extra support on the outfeed side such as an auxiliary support or roller stand.** Long and heavy pieces may cause the table saw to tip over if not supported properly.
>
> **Don't try to cut large sheets that you cannot guide with the fence or miter gauge.** If you cannot see the tabletop under the workpiece, the workpiece is too big for safe cutting with the table saw.
>
> **Use common sense – if your set up doesn't feel right or is not complete – Don't attempt the cut!** Complete the set up using clamps, feather boards, push sticks, fence, miter gauge, outfeed support, side support or whatever it takes to keep the workpiece moving through the blade cleanly, smoothly and without making contact with you.
>
> Have blade extend approximately ⅛" above top of workpiece.

(Def. SUMF ¶¶ 8, 9, 10, 11, 18.)

Plaintiff's experts, Mehler and Holt, inspected Plaintiff's saw in June 2014, after the blade guard had been removed. (Id. ¶¶ 29, 31.)

No standard now or in the past has required the incorporation of flesh detection technology into table saws. (Id. ¶ 41.) When Plaintiff's saw was manufactured in 2009, no benchtop table saw on the market included flesh detection technology. (Id. ¶ 39.) In 2010 Stephen Gass, PhD, announced that he expected to release a flesh detection equipped benchtop table saw "soon." (Id. ¶ 42.) A table saw with flesh detection technology, a table saw manufactured by Dr. Gass's company, SawStop, LLC, was not available for sale on the market until March 2015. (Id. ¶¶ 35, 43.)

## Discussion

In a diversity case, such as this one, the Court applies the substantive law of the state in which the district court sits, or, in this case, the substantive law of Missouri. See **Urban Hotel Dev. Co. v. President Dev. Group, L.C.**, 535 F.3d 874, 877 (8th Cir. 2008).

Defendant seeks entry of summary judgment in its favor on all of Plaintiff's claims. In relevant part, Defendant contends Plaintiff has failed to present necessary expert testimony to support his manufacturing defect claim. In his response to the motion, Plaintiff "clarifies that [he] is not brin[g]ing a manufacturing defect claim against [Defendant]." (Pl. Opp'n Mem. at 16 [Doc. 105].) Therefore, the Court will not further address any such claim or the motion directed to any such claim, and will consider Plaintiff's claims as based on design defect only. To clarify, a design defect claim differs from a manufacturing defect claim in that a defectively designed product is sold in the condition intended by the manufacturer, while a defectively manufactured product is not. **Richcreek v. General Motors Corp.**, 908 S.W.2d 772, 775-76 (Mo. Ct. App. 1995).

Defendant also argues that Plaintiff cannot establish his design defect claim through circumstantial evidence. Plaintiff responds that he "is **not** seeking to prove product defect through circumstantial evidence, *res ipsa loquitor*, or any other similar theory; rather Plaintiff is relying on the testimony of his experts to establish product defect." (Pl. Opp'n Mem. at 10.) Therefore, the Court will consider Plaintiff's design defect claims as so limited.

In support of its motion for summary Defendant argues that, even if Plaintiff's experts' opinions are admissible, those opinions are insufficient to satisfy Plaintiff's burden of proof in that they do not establish that a design defect proximately caused Plaintiff's injuries.

Summary judgment standard. Rule 56(a) of the Federal Rules of Civil Procedure mandates the entry of summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **MidAmerican Pension and Emp. Benefits Plans Admin. Comm. v. Cox**, 720 F.3d 715, 718 (8th Cir. 2013); see also **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23 (1986) (discussing prior Rule 56(c), the predecessor to Rule 56(a) of the Federal Rules of Civil Procedure).

> The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp.[,] 477 U.S. [at] 323 . . . . [The nonmovant then has the opportunity to identify specific portions of the record showing there is a genuine dispute of material fact. See Fed. R. Civ. P. 56(c)(1).] "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" Ricci v. DeStefano, [557 U.S. 557, 586] (2009), quoting Scott v. Harris, 550 U.S. 372, 380 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing

> Prods., Inc., 530 U.S. 133, 150 . . . (2000), quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 . . . (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 . . . (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" <u>Ricci</u>, [557 U.S. at 586], quoting <u>Matsushita</u>, 475 U.S. at 587.

**<u>Torgerson v. City of Rochester</u>**, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (en banc) (first alteration in original). The existence of a factual dispute is not enough alone to avoid entry of summary judgment; "rather, the dispute must be outcome determinative under the applicable law." **<u>Hammer v. City of Osage Beach, MO</u>**, 318 F.3d 832, 837 (8th Cir. 2003) (citing <u>Anderson</u>, 477 U.S. at 248). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." **<u>Othman v. City of Country Club Hills</u>**, 671 F.3d 672, 675 (8th Cir. 2012) (citing <u>Anderson</u>, 477 U.S. at 248). In resolving whether no genuine dispute of material fact exists and movant is entitled to entry of summary judgment, the Court must keep in mind that it "must view the evidence in the light most favorable to the opposing party" and draw all reasonable inferences in favor of that party. **<u>Tolan v. Cotton</u>**, 134 S. Ct. 1861, 1866, 1868 (2014) (per curiam) (internal quotation marks omitted) (quoting <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 157 (1970)).

In Missouri, a strict liability case may be pursued based on a claim that the product was defectively designed. **<u>Blevins v. Cushman Motors</u>**, 551 S.W.2d 602, 607 (Mo. 1977) (en banc). To establish a submissible case for a product liability claim, a plaintiff must prove

> (1) the defendant sold a product in the course of its business; (2) the product was then in a defective condition, unreasonably dangerous when put to a

reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; and (4) the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold.

**Columbia Mut. Ins. Co. v. Epstein**, 239 S.W.3d 667, 671 (Mo. Ct. App. 2007); see Mo. Rev. Stat. § 537.760. The term "unreasonably dangerous" does not need "judicial definition" and is instead "to be treated as an ultimate issue for the jury." **Rodriquez v. Suzuki Motor Corp.**, 996 S.W.2d 47, 65 (Mo. 1999) (en banc) (citing to Nesselrode v. Executive Beechcraft, Inc., 707 S.W.2d 371, 378 (Mo. 1986) (en banc), while declining to define "defect" and "unreasonably dangerous" for a strict liability claim); accord **Moore v. Ford Motor Co.** 332 S.W.3d 749, 756 (Mo. 2011) (en banc) (acknowledging, in a strict liability failure to warn case, that "'the concept of unreasonable danger . . . is presented to the jury as an ultimate issue without further definition'" (alteration in original) (quoting Nesselrode, 707 S.W.2d at 378)). The concept of reasonably anticipated use . . . includes misuse and abnormal use, which is objectively foreseeable." **Nesselrode**, 707 S.W.2d at 380-81.

A plaintiff may join a negligence claim and a warranty claim with a strict liability design defect claim. **Peters v. General Motors Corp.**, 200 S.W.3d 1, 17 (Mo. Ct. App. 2006). A negligence claim differs from a strict liability claim in that the focus in a negligence claim is on the defendant's conduct, while the focus in a strict liability claim is on the product itself. **Blevins**, 551 S.W.2d at 606-08. More specifically,

> the difference between negligence and strict liability in tort in defective design cases,
>
> > " *** is in strict liability we are talking about the condition (dangerousness) of a[ product] which is designed in a particular way, while in negligence we are talking about the

> reasonableness of the manufacturer's actions in designing and selling the [product] as [the manufacturer] did. The [product] can have a degree of dangerousness which the law of strict liability will not tolerate even though the actions of the designer were entirely reasonable in view of what he knew at the time he planned and sold the manufactured [product]."

**Id.** at 608 (quoting Phillips v. Kimwood Mach. Co., 525 P.2d 1033, 1037 (Or. 1974) (en banc)).

A negligent design claim requires the plaintiff to show that

> (1) the defendant owed a duty of care to the [plaintiff]; (2) the defendant breached that duty; (3) the breach was the cause in fact and the proximate cause of [the plaintiff's injury]; and (4) as a result of the breach, the plaintiff suffered damages.

**Heffernan v. Reinhold**, 73 S.W.3d 659, 664 (Mo. Ct. App. 2002). Although distinct from a strict liability theory, a negligence theory may rely on the same operative facts to support recovery except that, unlike a strict liability claim, the defendant's conduct is the focus in a negligence action. **Dorman v. Bridgestone/Firestone, Inc.**, 992 S.W.2d 231, 239 (Mo. Ct. App. 1999). If the design defect is such that "a reasonably prudent seller should have discovered it before selling the product to the consumer, [then] the seller may be held liable for the injuries caused by the defect." **Id.** The concept of reasonably anticipated use, applicable in a strict liability claim, applies to a product liability claim based on negligence. See, e.g., **DG&G, Inc. v. FlexSol Packaging Corp. of Pompano Beach**, 576 F.3d 820, 825 (8th Cir. 2009) (construing Missouri law and concluding that dismissal of the negligence claim was proper when the plaintiff did not establish a reasonably anticipated use with respect to the strict liability claim).

A plaintiff claiming a breach of the implied warranty of fitness for a particular purpose must establish the seller has reason to know any particular purpose for which the product is required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods.[2] **Heffernan**, 73 S.W.3d at 664. "To recover for breach of . . . [this] implied warrant[y], a plaintiff must prove that the buyer was injured by the defective nature of the goods." **Renaissance Leasing, LLC v. Vermeer Mfg. Co.**, 322 S.W.3d 112, 130 (Mo. 2010) (en banc); see also MAI 25.03 [1980 Revision] (2014).

With respect to its position that Plaintiff is unable to establish a design defect, Defendant notes that its expert, Peter Dominey, opines that the saw was not defective or unreasonably dangerous, and argues that Plaintiff does not "put forth" any evidence to counter that opinion other than Plaintiff's experts' concerns about users' removal of the 3-in-1 guard. If that were so, Defendant would be entitled to summary judgment because it is undisputed that Plaintiff had the guard on the saw at the time of the incident, and other users' non-use of the guard would be irrelevant. That is not the situation, however. Plaintiff's experts opined that the saw was defective and unreasonably dangerous due to a number of features of the saw's installed 3-in-1 guard assembly, including the location and stationary nature of the splitter, the insufficiency of the guard assembly's attachment mechanism, and

---

[2] By addressing the summary judgment motion with respect to this warranty claim, the Court is not intending to indicate that this claim is properly pursued under the circumstances of this case. In presenting their positions on the summary judgment motion, neither party addresses the elements of this claim, or the other claims, at any length, other than with respect to the design defect and causation requirements. Defendant also did not file any motion challenging the propriety of Plaintiff's warranty claim under the circumstances of this case. Therefore, the propriety of pursuing this claim in this lawsuit has not been presented to, and is not now before, the Court for resolution..

- 9 -

the absence of a rising and falling riving knife.  (See, e.g., Holt Decl. ¶¶ 7-13, 25, 34, 46, 51, 139; Mehler Decl. ¶¶ 10-11, 17-23, 29, 32.)  Additionally, Holt testified the absence of flesh detection technology rendered the saw defective and unreasonably dangerous, in that its presence would have reduced Plaintiff's injury to a minimal one.  (See, e.g., Holt Decl. at 16-35.)  To the extent Defendant relies on its perspective that various circumstances of the incident adversely affected Plaintiff's experts' opinions, both of Plaintiff's experts testified that those circumstances did not affect the occurrence of the incident or their opinions.  (See, e.g., Mehler Decl. ¶¶ 29-34; Holt Decl. ¶¶ 145, 147, 148.)  Defendant's position comes down to a consideration of the weight and credibility of the experts' testimony; matters for the jury to resolve at trial, rather than for this Court to decide on summary judgment.

As further support for its position that it is entitled to entry of summary judgment in its favor regarding any design defect, Defendant contends that this case is "very similar" to **Dunn v. Nexgrill Ind., Inc.**, 636 F.3d 1049 (8th Cir. 2011).  That case, however, is distinguishable.  There, the trial court excluded one of plaintiff's experts, and found the plaintiff's other two experts were not able to testify that the product was in a defective condition or that a defect caused the incident; so, there was no expert opinion countering the defendant's expert's opinion that evidence of a design defect causing the incident did not exist.  **Id.** at 1058.  To the contrary, here, the Court has not excluded Plaintiff's experts, Mehler and Holt, whose testimony regarding design defect contradicts that of Defendant's expert, Dominey.  Because there is admissible expert opinion regarding the existence of a design defect in the 3305 saw, and genuine disputes of material facts regarding any design

defect, the Court is not persuaded that **Dunn** requires the granting of Defendant's summary judgment motion.

Defendant is not entitled to entry of summary judgment in its favor based on its design defect argument.

Defendant then argues that the record demonstrates it is entitled to entry of summary judgment in its favor based on the causation element of Plaintiff's claims. Causation is an essential element of all three of Plaintiff's claims. **Heffernan**, 73 S.W.3d at 664 (strict liability and negligence claims); **Pro Serv. Auto., L.L.C. v. Lenan Corp.**, 469 F.3d 1210, 1214 (8th Cir. 2006) (construing Missouri law regarding strict liability and implied warranty claims). While evidence of causation cannot rest on conjecture or speculation, a plaintiff is not required either to exclude all possibility of another cause for his injuries or to present undisputed evidence of causation. **Kircher v. Purina Mills, Inc.**, 775 S.W.2d 115, 117 (Mo. 1989) (en banc); **Daniel v. Indiana Mills & Mfg., Inc.**, 103 S.W.3d 302, 310 (Mo. Ct. App. 2003). "It is sufficient if the facts and circumstances in evidence fairly warrant the conclusion that the defect claimed by plaintiff was the cause of the injury [the plaintiff] sustained." **Daniel**, 103 S.W.3d at 310; see also **Kircher**, 775 S.W.2d at 117 (to demonstrate causation, a plaintiff need only present "substantial evidence that a particular cause for which [the] defendant is liable is responsible for [the] plaintiff's injuries or damages").

Expert testimony to demonstrate causation is necessary, in cases such as this one, where it would assist a lay jury which does "not possess the experience or knowledge necessary to determine causation." **Pro Serv. Auto., L.L.C.**, 469 F.3d at 1214; accord

**Hagen v. Celotex Corp.**, 816 S.W.2d 667 (Mo. 1991) (requiring expert testimony to "establish the causal relationship" in an asbestos wrongful death case against several asbestos manufacturers). An expert's testimony may constitute substantial evidence of causation. **Kircher**, 775 S.W.2d at 117. Importantly, a "jury can determine that an injury was caused by a design defect, rather than other causes, when a qualified expert testifies that the defect was the more reasonable cause." **Dorman**, 992 S.W.2d at 239.

Because Plaintiff's experts opine that the accident would have been avoided if the saw had a modular guard or an independent riving knife, and that the severity of the injury would have been significantly reduced with the presence of flesh detection technology, Plaintiff has provided sufficient evidence of, and genuine disputes of material facts regarding, causation so as to avoid entry of summary judgment in favor of Defendant on this element as well. To the extent Defendant points to evidence of Plaintiff's reportedly unsafe use of the saw at the time of the incident and challenges Holt's testimony regarding the flesh detection technology, those matters present genuine disputes of material fact that preclude the granting of Defendant's summary judgment motion. There is substantial evidence from which a jury could conclude either a defective design of the saw was responsible for the injury-producing kickback incident or it was not. Defendant contends Plaintiff is unable to establish that any design defect, rather than his allegedly unsafe use of the saw, caused the accident. Plaintiff's experts, however, have opined that the circumstances Defendant relies on in support of this argument did not affect the occurrence of the kickback; that various aspects of the saw reveal design defects; and that it was feasible to incorporate flesh detection technology in the saw

used by Plaintiff. Moreover, in light of the record, any evidentiary support for Plaintiff's unsafe use of the saw supports a trial to ascertain whether Defendant should have reasonably anticipated such use and whether such use, rather than any design defect, was the cause of the incident.

Defendant's reliance on **Willard v. Bic Corp.**, 788 F. Supp. 1059 (Mo. W.D. 1991), to support its position that Plaintiff has not satisfied his burden to demonstrate causation and avoid the entry of summary judgment in favor of Defendant, is not persuasive. The trial court in that lawsuit excluded the plaintiffs' experts' testimony. **Id.** at 1065-69. That court first found, in relevant part, that one of the plaintiffs' experts' testimony was inadmissible to create questions of fact for the jury because it was not supported by the evidence. **Id.** at 1065-66. Then, the court concluded another of the plaintiffs' experts' testimony "suffer[ed] from the same weaknesses as" the first expert discussed, and was "ambiguous and inconclusive." **Id.** at 1067. As to the plaintiffs' third expert, the trial court in **Willard** noted that expert relied on the reports of the first two, excluded, experts and concluded that the third expert's testimony also was not admissible on the issue of causation. **Id.** at 1068. Having excluded all three of the plaintiff's experts as not supported by the facts or evidence, as based on speculation and conjecture, or as not being helpful to the jury, the court concluded the plaintiffs had failed to avoid the entry of summary judgment in favor of the defendant on the issue of causation. **Id.** at 1069.

To the contrary, here this Court has concluded that Plaintiff's experts' testimony is admissible, reliable, and helpful to the jury; accordingly, Plaintiff's expert testimony is

sufficient to create questions of fact regarding causation so as to preclude the entry of summary in Defendant's favor.

## CONCLUSION

Having considered the available record, in light of the principles applicable to consideration of a motion for summary judgment, the Court will deny Defendant's motion. Genuine disputes of material facts exist regarding design defect and causation; and Defendant is not entitled to entry of summary judgment in its favor as a matter of law.

Accordingly, after careful consideration,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment [Doc. 79] is **DENIED** as moot with respect to any claim by Plaintiff of manufacturing defect and as to any proof by circumstantial evidence, due to Plaintiff's concession that he is not pursuing such a claim or that type of proof in this lawsuit.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment [Doc. 79] is otherwise **DENIED**.

**IT IS FINALLY ORDERED** that Defendant's request for oral argument on its motion for summary judgment is **DENIED**.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 24th day of September, 2015.